OPINION
{¶ 1} Appellant, Bryan C. Whiteman, appeals from a final judgment of the Portage County Court of Common Pleas denying his motion to withdraw his guilty plea. For the reasons that follow, we affirm the judgment of the trial court.
{¶ 2} In June 2000, the Portage County Grand Jury indicted appellant on six counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) and (B), and one count of attempted rape, in violation of R.C. 2923.02(A) and R.C. 2907.02(A)(1) and (B). The trial court appointed counsel to represent appellant, who then entered a plea of not guilty to all seven charges.
{¶ 3} On September 12, 2000, appellant appeared with counsel before the trial court and entered a written and oral plea of guilty to the single count of attempted rape. After determining that appellant's plea was voluntarily, knowingly, and intelligently made, the trial court dismissed the remaining six charges and referred appellant to the adult probation department for a presentence investigation. Following the presentence investigation, the trial court conducted a sentencing hearing on November 13, 2000, during which he ordered appellant to serve a definite seven-year term of imprisonment. Appellant never filed a direct appeal from his conviction.
{¶ 4} Nearly nine months later, on July 23, 2001, appellant filed a pro se motion to withdraw his guilty plea pursuant to Crim.R. 32.1. In his motion, appellant maintained that he had received ineffective assistance of counsel because his attorney had failed to do the following: (1) discuss the facts of the case, defenses, tactics, and trial strategy with him; (2) conduct a proper investigation; (3) object when the trial court proceeded to sentence him in violation of a negotiated plea agreement; (4) present mitigating evidence or testimony at the sentencing hearing; and (5) object to the trial court's consideration of improper evidence during sentencing. In addition, appellant argued that the state had breached a plea agreement in which he had agreed to plead guilty under the condition that the charges against him would be dropped if he subsequently passed a polygraph examination. Finally, appellant submitted that the trial court had considered improper evidence when sentencing him. The motion included an abbreviated affidavit from appellant in which he stated "that each of the foregoing statements are true and correct to the best of [his] knowledge and belief[.]"
{¶ 5} Without holding a hearing, the trial court overruled appellant's motion to withdraw his guilty plea. From this judgment, appellant, acting pro se, filed a timely notice of appeal with this court. He now offers the following assignments of error for our consideration:
{¶ 6} "[1.] Whether the trial court abused its discretion and violated appellant['s] procedural due process rights' [sic] by failing to accord defendant/appellant an evidentiary hearing on his *pro se motion to withdraw guilty plea[.]
{¶ 7} "[2.] Whether the state of Ohio's violation of the contractual plea agree[ment] *upon which defendant's plea did lie constituted manifest injustice where that breach resulted in *substantial prejudice to the defendant[.]
{¶ 8} "[3.] Whether the penalty imposed is [sic] this case *through O.R.C. 2929.14(B) is constitutional in light of recent 'United States Supreme Court' holding's [sic] on statutory construction[.]
{¶ 9} "[4.] Whether the defendant was denied effective assistance of counsel in violation of the federal constitution's Sixth Amendment[.]"
{¶ 10} After filing his appeal, appellant asked for and this court appointed counsel to represent him. Appellant's new attorney then filed a second brief submitting the following additional assignments of error:
{¶ 11} "[1.] The trial court abused its discretion by denying appellant's motion to withdraw his guilty plea without having held an evidentiary hearing.
{¶ 12} "[2.] The trial court erred by imposing sentences greater than the minimum sentence available upon appellant, in violation of R.C.2929.14(B)[.]"
{¶ 13} In his first and fourth pro se assignments of error, appellant argues that the trial court abused its discretion in failing to hold an evidentiary hearing on his motion to withdraw his guilty plea. According to appellant, the allegations in his motion supported a claim of ineffective assistance of counsel, and that such allegations, if believed, required that the trial court permit him to withdraw his plea.
{¶ 14} Similarly, under his second pro se assignment of error and his first assignment of error submitted by appointed counsel, appellant contends that the trial court should have permitted him to withdraw his guilty plea because, in addition to ineffective assistance of counsel, the state breached the parties' negotiated plea agreement. Appellant maintains that if he knew the state would not dismiss all charges after he successfully passed a polygraph examination he never would have pled guilty to attempted rape. Because these four assignments of error present related issues, we will consider them together.
{¶ 15} Crim.R. 32.1 provides:
{¶ 16} "Withdrawal of Guilty Plea. A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
{¶ 17} Therefore, in order to withdraw a guilty plea after the imposition of sentence, a defendant must show that withdrawal is necessary to correct a manifest injustice. State v. Kerns (July 14, 2000), 11th Dist. No. 99-T-0106, 2000 WL 973408, at 1. The burden of establishing the existence of a manifest injustice is upon the defendant asking the court to vacate his plea. State v. Gibbs (June 9, 2000), 11th Dist No. 98-T-0190, 2000 WL 757458, at 2.
{¶ 18} A motion to withdraw a guilty plea "is addressed to the sound discretion of the trial court, and the good faith, credibility, and weight of the movant's assertions in support of the motion are matter's to be resolved by the court." Kerns at 1. As a result, our review is limited to a determination of whether the trial court abused its discretion in denying the motion to withdraw the guilty plea. Id. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
{¶ 19} Although a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of a guilty plea if the request is made before sentencing, State v. Xie (1992),62 Ohio St.3d 521, paragraph one of the syllabus, the same is not true when the request is made after the trial court has already sentenced the defendant. Kerns at 2. In those situations where the trial court must consider a post-sentence motion to withdraw a guilty plea, a hearing is only required if the facts alleged by the defendant and accepted as true would require the trial court to permit withdrawal of the plea. Id.
{¶ 20} In other words, "if the defendant fails to submit evidence containing sufficient operative facts to demonstrate that his plea was not entered into knowingly and voluntarily, and the record indicates that the defendant is not entitled to relief, the trial court may dismiss the motion without a hearing." Id. Moreover, a defendant's own self-serving allegations are insufficient to rebut a record demonstrating that the plea was properly made. State v. Young (Oct. 22, 1999), 11th Dist. No. 98-T-0128, 1999 WL 1073610, at 5.
{¶ 21} With respect to the defendant's burden, this court has noted that:
{¶ 22} "'Implicit in this [standard] is the recognition that a court's adherence to Crim.R. 11 raises a presumption that the plea was voluntarily entered. *** The proponent of the motion to withdraw the plea has the burden of rebutting that presumption by demonstrating that the plea was infirm. The motion to withdraw a plea must, at a minimum, make a prima facie showing of merit before the trial court need devote considerable time to it. *** Stated differently, the scope of the hearing to be held on the Crim.R. 32.1 motion should be reflective of the substantive merit of the motion itself. Hence, bold assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit. ***.' (Citations omitted.)" State v. Haney (Sept. 8, 1995), 11th Dist. No. 95-L-001, 1995 WL 787405, at 3, quoting State v. Hall (Apr. 27, 1989), 8th Dist. No. 55289, 1989 WL 42253, at 1.
{¶ 23} After reviewing appellant's motion, we conclude that his submissions were insufficient to meet the foregoing standard. Appellant first argues that his plea was not made in a knowing and voluntary manner because he received ineffective assistance of counsel. Generally speaking, a properly licensed attorney is presumed to have rendered effective assistance in representing a defendant in a criminal action. Kerns at 3. In order to prove ineffective of counsel in the context of a conviction based on a guilty plea, a defendant must demonstrate that his attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. Id. Specifically, the defendant must show that there is a reasonable probability that, but for counsel's error, the defendant would not have pled guilty and would have insisted on going to trial. Id. However, this court in State v. Sopjack (Dec. 15, 1995), 11th Dist. No. 93-G-1826, 1995 WL 869968, at 4, stated:
{¶ 24} "the mere fact that, if not for the alleged ineffective assistance, the defendant would not have entered the guilty plea, is not sufficient to establish the necessary connection between the ineffective assistance and the plea; instead, the ineffective assistance will only be found to have affected the validity of the plea when it precluded the defendant from entering the plea knowingly and voluntarily."
{¶ 25} Having carefully considered the record, we conclude that there is no evidence to show that appellant's attorney was deficient in his representation. As a matter of fact, to the extent that there is evidence, it shows that not only did appellant's attorney explain everything to appellant before he entered his plea, but that appellant also understood the nature of the proceedings.
{¶ 26} For example, in his written plea, which was signed by both appellant and his attorney, appellant states in pertinent part the following:
{¶ 27} "1. That I have been informed by my Attorney and by the Judge and I understand the nature of the charge(s) to which I am pleading guilty ***
{¶ 28} "2. I have been informed that if I am imprisoned that after my release from prison I will be under post release control R.C. 2967.28. ***
{¶ 29} "3. That I have been informed by my Attorney and by the Judge of the effect of my guilty plea and its consequences, and I understand them; ***
{¶ 30} "4. That I have been informed by my Attorney and by the Judge that by pleading guilty I waive the following Constitutional Rights, and I understand these rights and it is my intention to waive them: ***
{¶ 31} "5. That I have been informed that by pleading guilty I waive my right to appeal any issues that might have been raised had I gone to trial and been convicted, and I understand that right of appeal and it is my intention to waive it.
{¶ 32} "6. That I have been fully advised by my Attorney of the Criminal Rule 11(F) plea negotiations which have also been stated in open Court and I accept those negotiations as my own.
{¶ 33} "7. That no promises or threats have been made to me by anyone to secure my guilty plea in this case, nor have I been coerced in any way by any person to plead guilty.
{¶ 34} "8. That I have either read this Written Plea of Guilty or it has been read to me and I understand it, and that I wish to waive all of the rights set forth herein and voluntarily plead GUILTY to the charges(s) set forth above." (Emphasis added.)
{¶ 35} Moreover, the transcript of the plea hearing indicates that the trial court meticulously complied with the requirements of Crim.R. 11 when accepting appellant's plea. If appellant was not satisfied with his attorney's representation, he could have informed the trial court of this fact at that time.
{¶ 36} For appellant to now argue that his guilty plea was somehow affected by his attorney's alleged deficient performance, without providing any evidence rebutting his written, voluntary guilty plea, is completely inconsistent with the record. The only evidence provided with appellant's motion to support his claims was his self-serving affidavit essentially stating that his allegations were true. Nevertheless, there is nothing else to indicate that appellant's plea was invalid as a result of ineffective assistance of counsel because there is no evidence to support appellant's claim that his attorney's representation was deficient.
{¶ 37} We reach the same result with respect to appellant's argument that the state breached the parties' negotiated plea agreement. According to appellant, he agreed to plead guilty to the single count of attempted rape based on the following conditions: (1) he would take a polygraph examination; and (2) if he successfully completed the examination, he "would be 'released from custody' with each of the respective charges against him dropped 'with prejudice.'"
{¶ 38} A negotiated plea agreement is essentially a contract between the state and the defendant. State v. Olivarez (Mar. 31, 1999), 11th Dist. No. 97-L-288, 1999 WL 262158, at 3. Accordingly, "the terms of a given plea agreement must be ascertained before it can be determined whether a party breached the agreement." Id. If the terms of a plea agreement are established and the trial court determines that the state breached the agreement, the court has the discretion to either allow the defendant to withdraw his plea or order the state to specifically perform its obligation. Id. See, also, State v. Mathews (1982), 8 Ohio App.3d 145,146.
{¶ 39} Appellant's signed guilty plea does not mention a plea agreement; it simply states that he was pleading guilty to a single count of attempted rape. The written plea also clearly provides that "no promises or threats have been made to [appellant] by anyone to secure [his] guilty plea in this case, nor [had he] been coerced in any way by any person to plead guilty."
{¶ 40} Furthermore, during the September 12, 2000 plea hearing, neither party mentioned a plea agreement involving a polygraph examination. Instead, the prosecutor stated that if appellant pleaded guilty to attempted rape, the state would then ask the trial court to dismiss the six gross sexual imposition charges and a separate charge in an unrelated case. The trial court then proceeded to ask appellant if he understood the consequences of his plea. When the court finally asked appellant if he had been promised anything not already mentioned during the hearing, appellant told the court "[n]o"
{¶ 41} Appellant, however, suggests that the trial court's docket supports his argument that the state agreed to dismiss all charges if he passed a polygraph examination. In doing so, he argues that there would be "no point in the trial court's conveying [him] for a polygraph examination the day after sentencing if the result of such polygraph did not have a substantial effect upon the sentence." Unfortunately, appellant is mistaken in his review of the record.
{¶ 42} On September 7, 2000, the trial court ordered the Portage County Sheriff to transport appellant to PolyTech Associates, Inc., in Akron, Ohio, so that he could take a polygraph examination the next day, September 8. This was four days before appellant signed his written guilty plea, not the day after sentencing as appellant now claims. Regardless, there is nothing in the record indicating whether or not appellant ultimately passed the examination, which, according to him, would have obligated the state to dismiss the charges. As a result, because appellant's affidavit, taken into consideration with the other evidence, was insufficient to make a prima facie showing that such a negotiated plea agreement existed, he was not entitled to withdraw his guilty plea based on an alleged breach of that same agreement. See Robertson v. Ohio Adult Parole Auth. (Aug. 20, 2002), 10th Dist. No. 01AP-1111, 2002 WL 1935700, 31 (holding that "[a] court cannot assess whether a plea bargain was breached if there is no evidence in the record concerning the terms of the agreement."); State v. Morris (June 2, 1992), 10th Dist. No. 91AP-1527, 1992 WL 125273, at 2.
{¶ 43} Moreover, merely because appellant submitted an affidavit with his motion does not necessarily mean that he was automatically entitled to an evidentiary hearing. In State v. Calhoun, 86 Ohio St.3d 279,1999-Ohio-102, paragraph one of the syllabus, the Supreme Court of Ohio noted the following:
{¶ 44} "In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." (Emphasis added.)
{¶ 45} Even though Calhoun only addressed the credibility of affidavits submitted with petitions for postconviction relief, this court has determined that the same principle of law also applies to affidavits filed in support of motions to withdraw guilty pleas. State v. Christley (May 29, 2000), 11th Dist. No. 99-P-022, 2000 WL 655448, at 4. As would be the case when considering a postconviction relief petition, to hold otherwise would require a hearing every time a defendant filed a motion to withdraw a guilty plea. See, e.g., Calhoun at 284.
{¶ 46} Upon engaging in the appropriate review, we conclude that the trial court did not abuse its discretion in declining to conduct an evidentiary hearing before overruling appellant's motion to withdraw his guilty plea as appellant's motion was insufficient to establish a manifest miscarriage of justice. Appellant's first, second, and fourth pro se assignments of error, along with the first assignment of error submitted by appointed counsel, have no merit.
{¶ 47} Under his third pro se assignment of error and his second assignment of error submitted by his appellate attorney, appellant argues that the trial court erred in sentencing him to serve more than the minimum sentence because the court failed to make the required findings under R.C. 2929.14(B).
{¶ 48} The question of whether the trial court properly sentenced appellant could have been and should have been raised in a direct appeal from the trial court's sentencing judgment. In State v. Szefcyk (1996),77 Ohio St.3d 93, syllabus, the Supreme Court of Ohio held the following:
{¶ 49} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or an appeal from that judgment." (Emphasis sic.). See, also, State v. Jackson (Mar. 31, 2000), 11th Dist. No. 98-T-0182, 2000 WL 522440, at 5 (holding that the doctrine of res judicata precludes a party from raising any claim in a subsequent proceeding that could have been raised on direct appeal).
{¶ 50} Appellant, as we noted earlier, did not file a direct appeal from his conviction. As a result, he is now precluded from raising issues concerning his sentence in the context of an appeal from a denial of a motion to withdraw a guilty plea. See, e.g., State v. Giles (Nov. 8, 1997), 11th Dist. No. 97-P-0022, 1997 WL 752619, at 5. If appellant wanted to challenge his sentence, he should have raised the issue in a direct appeal of the trial court's November 15, 2000 judgment. Appellant's third pro se assignment of error and his second assignment of error submitted by his appointed attorney have no merit.
{¶ 51} Based on the foregoing analysis, appellant's six assignments of error are not well-taken. The judgment of the trial court, therefore, is affirmed.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.